

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2007

# Valero Marketing v. Greeni OY

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3390

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Valero Marketing v. Greeni OY" (2007). *2007 Decisions.* Paper 722.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/722

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No:  06-3390/06-3525

VALERO MARKETING &
SUPPLY COMPANY,

Appellant in 06-3390

v.

GREENI OY;
GREENI TRADING OY, Appellant in 06-3525
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 01-cv-5254)
District Judge:   Honorable Dickinson R. Debevoise
_____

Argued June 27, 2007

Before:   BARRY, FUENTES and JORDAN, *Circuit Judges.*

(Filed:  July 19, 2007)
_____

James A. Saville, Jr. [ARGUED]
Hill Rivkins & Hayden LLP
924 US Highway 9 South
South Amboy, NJ 08879
    *Counsel for Appellant/Cross-Appellee*

Michael G. Davies [ARGUED]
Vedder, Price, Kaufman & Kammholz, P.C.
805 Third Avenue
New York, NY   10022
    *Counsel for Appellee/Cross-Appellant*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Valero Marketing & Supply Co. ("Valero") appeals from the judgment of the District Court against it and in favor of the defendant, Greeni Trading Oy ("Greeni").[1] Because we have concluded that the District Court erred in holding that the parties' September 14, 2001 agreement was not a valid contract, we will reverse and remand the case for further consideration.

I.

Because we write only for the parties, we set forth only those facts relevant to our decision. On August 15, 2001, Greeni contracted with Valero to sell to Valero 25,000 metric tons of naphtha, a liquid that can be blended with other components to make finished gasoline. That contract (the "August 15 Agreement") was the result of discussions conducted wholly through a middleman; Greeni and Valero did not speak to each other directly. A written confirmation of the deal was sent by the middleman to both parties that same day. The confirmation contained the agreed upon price term and provided that delivery was to be to Valero's tanks in New York Harbor[2] between

_____

[1] In the original complaint, a related company, Greeni Oy, was named as a defendant, but the complaint against Greeni Oy was dismissed by the District Court with the agreement of the parties.

[2] The portion of the harbor involved in this case is a port in Perth Amboy, New Jersey.

2

September 10 and 20, 2001. The confirmation also provided that the vessel used to carry the naphtha would be "subject to [Valero's] marine department acceptance which shall not be unreasonably withheld." Joint Appendix ("J.A.") at 901.

Valero sent its own written confirmation to Greeni on August 17, 2001. That document generally confirmed the terms of the August 15 Agreement as stated by the middleman, but also provided that "New York law and jurisdiction shall apply." J.A. at 906. Greeni did not object or otherwise respond to Valero's purported confirmation.

After the August 15 Agreement was in place, Greeni arranged for a vessel to carry the naphtha from Greeni's stock location in Europe to Valero's tanks in New York Harbor. By August 23, 2001, Greeni had taken out subjects[3] on a ship called the BEAR G, a ship that Greeni had previously used many times to carry petroleum products. Despite the contract provision that any ship Greeni chose to deliver the naphtha was subject to Valero's approval, and in a reversal of the order of events it should have followed, Greeni obligated itself on August 29, 2001 to use the BEAR G to ship the naphtha, and only after that, on August 30, 2001, proposed the BEAR G to Valero. Greeni claims that it committed itself to the BEAR G before gaining Valero's approval because Valero had previously approved the BEAR G to carry vacuum gas oil, another petroleum product.

---

[3] "Taking out subjects" on a vessel is a common practice in the shipping industry, and means, as we understand from the record, reserving a ship subject to a later, definitive obligation to use that ship. The practice allows the parties to a shipping contract a period of time to decide whether they want to use a particular vessel.

When Greeni nominated the BEAR G to Valero, Valero undertook a process it calls "vetting" the vessel. A representative of Valero worked for about an hour to review different reports and call industry contacts to ask for information about the BEAR G. Valero ultimately rejected the BEAR G, sending an email to Greeni on August 30 stating, without elaboration: "We have received your nomination of the vessel 'Bear G'. Unfortunately, this vessel does not meet Valero's criteria for acceptance at this time. We kindly ask that you renominate another vessel for our review." J.A. at 969.

Despite Valero's rejection of the BEAR G, and because Greeni was unable to find another vessel, Greeni loaded the naphtha destined for Valero onto the BEAR G. However, because of a delay in loading the BEAR G in Hamburg, Germany, it did not leave Hamburg until September 10, 2001. As of that date, the master of the BEAR G estimated an arrival in New York Harbor on September 21, 2001, outside the contractual delivery window.

On September 14, 2001, the parties entered into a new agreement (the "September 14 Agreement"). Valero, through the same middleman, sent a proposal to Greeni suggesting that it would not permit Greeni to offload the naphtha directly at the terminal but would take delivery only by barge because Greeni had chosen to use an unapproved vessel, the BEAR G, to ship the naphtha. Valero also stated that, because it would be impossible for Greeni to deliver within the contractual window, Valero would

> accept the total volume of product delivered by Greeni to their terminal no later than midnight on September 23. For this accomodation [sic] the contract price will be adjusted by a discount of $0.0175 per us gallon. After

4

this time Valero is not obligated to take any more volume under this contract. For all barrels delivered on September 20, Valero will of course pay the full contract price.

J.A. at 908. The proposal also specified that it would be Greeni's responsibility to charter the barges, something that Greeni generally had not done before. Greeni agreed to the proposal, although it later complained that it felt the proposal was a "take it or leave it" proposition. Valero sent a written confirmation of the agreement to Greeni, specifying that it would take delivery of all cargo delivered by barge before midnight on September 24, 2001.[4]

The BEAR G arrived in New York Harbor on September 22 at 3:30 in the morning. Greeni asserts that it could have delivered the naphtha by the end of the day on the 22nd, within the contract extension time, if Valero had not insisted that delivery be by barge.[5] The parties do not dispute that no naphtha was delivered to Valero by September 24.

Both parties claim they sustained significant losses. Valero asserts that it intended to blend the naphtha with other components to make 87 octane gasoline, which it would have sold prior to September 30, 2001, and that each day of delay cost Valero significant sums of money. Greeni, on the other hand, asserts that because Valero refused to accept

---

[4] Although Valero had originally proposed that delivery must take place by September 23, the parties later agreed to delivery by September 24.

[5] Although Greeni attempted to charter barges to deliver the naphtha to Valero, it was unable to do so. As the District Court observed, "Greeni cites the World Trade Center attack of September 11, 2001 as the reason for its inability to charter barges by September 24, 2001." J.A. at 5, n.6.

delivery of the naphtha and because the market price for naphtha was falling, it had to cover by selling its naphtha to Valero and others at significantly reduced prices, and that it also incurred charges for keeping the BEAR G in New York Harbor for an extended period of time.

Valero filed suit against Greeni in the United States District Court for the District of New Jersey on November 13, 2001, alleging that Greeni had breached the contract between the parties. Greeni counterclaimed, asserting that it was Valero that had breached the contract. Valero moved for summary judgment on liability. The District Court denied that motion, stating that the United Nations Convention on Contracts for the International Sale of Goods ("CISG") applied to the agreement, and that, under that law, there were genuine issues of material fact as to whether there was a breach of contract. The Court also found that the September 14 Agreement constituted a new contract.[6]

The District Court conducted a four-day bench trial, and issued its findings of fact and conclusions of law on April 4, 2006. It concluded that Valero's rejection of the BEAR G was unreasonable, and thus a violation of the August 15 Agreement. The Court also found that, under the CISG, Greeni had breached the August 15 Agreement by arriving in New York Harbor two days outside the contractual window set by that

_____

[6] Greeni filed a motion asking the Court to amend its summary judgment opinion to delete the finding that a second agreement was reached on September 14, 2001. The Court, however, denied that motion and reaffirmed that "there was a second agreement" stating that "[t]he evidence of the existence and terms of the September 14, 2001 agreement is not negated by competent evidence." J.A. at 21.

agreement. However, the Court concluded that the delay did not entitle Valero to avoid its obligations under the contract because that two-day delay did not amount to a fundamental breach of the August 15 Agreement.

The District Court went on to discuss the September 14 Agreement that allowed Greeni to deliver the naphtha by September 24. The Court highlighted Article 47 of the CISG, one of the provisions that govern the "Remedies for Breach of Contract by the Seller in a Sale of Goods." That provision allows a buyer to set an additional period of time for the seller to deliver, but states that "the buyer may not, during that period, resort to any remedy for breach of contract." 15 U.S.C. App. Art. 47(2). The Court held that, in consequence of that provision, Valero did not have the right to demand that Greeni enter into the September 14 Agreement, and thus despite its earlier holding to the contrary, the Court ruled that the September 14 Agreement was of no effect. Therefore, the District Court found that Valero was entitled to recover damages only for the two-day delay between the September 20 delivery deadline in the August 15 Agreement and the day the BEAR G arrived in New York Harbor. It went on to find that Valero had not proven it suffered any damages from that delay. It also found that, because Valero improperly avoided its obligations under the August 15 Agreement, Greeni was entitled to recover damages for Valero's failure to accept delivery of and pay for the naphtha as required by that Agreement.

The District Court had jurisdiction in this diversity case pursuant to 28 U.S.C. § 1332. We have jurisdiction over the final order of the District Court under 28 U.S.C. § 1291.

## II.

Valero asserts, among other things, that the District Court erred in finding that the September 14 Agreement was of no effect. Whether the September 14 Agreement was a binding contract is a question of law subject to plenary review. *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000) ("[C]ontract construction, that is, the legal operation of the contract, is a question of law mandating plenary review.").

We assume *arguendo* that the District Court was correct in applying the CISG in interpreting the September 14 Agreement.[7] 15 U.S.C. App. Art. 1; *Valero Mktg. & Supply Co. v. Greeni Oy*, 373 F. Supp. 2d 475, 479 (D.N.J. 2005). The CISG contains two provisions, Articles 29 and 47, which are arguably relevant to the September 14 Agreement. The District Court, however, analyzed the September 14 Agreement only under Article 47.

Article 47 is one of the remedies the CISG provides to a buyer when a seller has breached a contract. That section states:

> (1) The buyer may fix an additional period of time of reasonable length for performance by the seller of his obligations.

---

[7] We do not perceive a conflict between the CISG and New York law on the issue of whether the September 14 Agreement is valid and binding.

8

(2) Unless the buyer has received notice from the seller that he will not perform within the period so fixed, the buyer may not, during that period, resort to any remedy for breach of contract. However, the buyer is not deprived thereby of any right he may have to claim damages for delay in performance.

15 U.S.C. App. Art. 47. The purpose of Article 47 is to allow a buyer to set an additional period of time for delivery, after which the contract can be avoided. *See* UNCITRAL Digest[8] Art. 47 ¶ 1 (stating that Article 47 "is particularly relevant for the right to terminate the contract under article 49."). Under Article 47, however, during any additional period of time that a buyer may grant for performance, the buyer is not entitled to ask for any other remedy for the seller's breach, including contract avoidance or price reduction. 15 U.S.C. App. Art. 47(2); *see also* UNCITRAL Digest Art. 47 ¶ 8 ("the buyer may not claim avoidance or price reduction as long as the additional period of time lasts"). Because the September 14 Agreement contained a price reduction term and a requirement that Greeni deliver the naphtha by barge, the District Court viewed the September 14 Agreement as an improper invocation of an additional remedy prohibited in Article 47. The District Court thus found that the September 14 Agreement was of no effect.

We do not agree with that reasoning. Assuming that the September 14 Agreement would not have been an appropriate use of Article 47 of the CISG, as the District Court held, that does not mean that the September 14 Agreement was an ineffective contract

_____

[8] The UNCITRAL Digest is a digest of international case law analyzing the CISG. It can be found at www.uncitral.org.

modification. Article 29 of the CISG discusses contract modification and states simply that "[a] contract may be modified or terminated by the mere agreement of the parties." 15 U.S.C. App. Art. 29. Although Greeni asserted at trial that it agreed to the September 14 Agreement because it felt that it was a "take it or leave it" proposition, the record is clear that Greeni did assent to that agreement. Greeni does not argue that it was under duress, and it was indeed free to leave the September 14 Agreement on the bargaining table, attempt to cover, and seek remedies for any breach of the August 15 Agreement. It chose instead to take the new deal. The "mere agreement" of the parties reflected in the September 14 Agreement thus constituted a permissible contract modification under Article 29, rather than an extension of time for performance under Article 47 of the CISG. Accordingly, the September 14 Agreement was valid and governed the conduct of the parties for the remainder of their interaction.[9]

We therefore reverse the District Court's judgment based on its holding that the September 14 Agreement was ineffective, and remand the case for further proceedings consistent with this opinion.[10]

---

[9] We need not, therefore, consider the District Court's finding that Valero unreasonably withheld its consent to the chartering of the BEAR G. We address here only the effectiveness of the September 14 Agreement. The legal consequences of that Agreement and the parties' actions are a matter for the District Court to determine in the first instance.

[10] Greeni has also filed a cross-appeal asserting that the District Court erred in not awarding it damages relating to demurrage charges it incurred because the BEAR G was in New York Harbor far longer than expected. Because we find that the September 14 Agreement was valid, and are consequently vacating the District Court's decision and remanding the case for a determination of the parties' rights and obligations under that

agreement, we will dismiss that appeal and leave to the District Court the determination
of the parties' damages in the first instance.

11